UNITED STATES DISTRICT COURT
DISTRICT OF MARYLAND
(SOUTHERN DIVISION)

CHAMBERS OF
THE HONORABLE GINA L. SIMMS
UNITED STATES MAGISTRATE JUDGE



6500 CHERRYWOOD LANE
GREENBELT, MARYLAND 20770

August 5, 2022

LETTER TO COUNSEL

      RE:   *Keri Diane P. v. Kijakazi, Acting Commissioner of Social Security*
              Civil No. GLS 21-0918

Dear Counsel:

Pending before this Court are cross-motions for summary judgment, filed by Plaintiff Keri Diane P., and the Social Security Administration. (ECF Nos. 13, 14). Upon review of the pleadings and the record, the Court finds that no hearing is necessary. *See* Local Rule 105.6. (D. Md. 2021).

The Court must uphold the decision of the Social Security Administration ("SSA" or "the Agency") if it is supported by substantial evidence and if the Agency employed proper legal standards. *See* 42 U.S.C. §§ 405(g), 1383(c)(3); *Craig v. Chater*, 76 F.3d 585, 589 (4th Cir. 1996). The substantial evidence rule "consists of more than a mere scintilla of evidence but may be somewhat less than a preponderance." *Craig*, 76 F.3d at 589. This Court shall not "re-weigh conflicting evidence, make credibility determinations, or substitute [its] judgment" for that of the SSA. *Id.* For the reasons set forth below, I will deny the motions, reverse the Commissioner's decision in part, and remand the case back to the SSA for further consideration.

I.    BACKGROUND

Plaintiff filed a Title II Application for Disability Insurance Benefits and a Title XVI Application for supplemental security income on July 3, 2019, alleging that disability began on June 15, 2019. (Tr. 12).[1] These claims were initially denied on October 8, 2019, and upon reconsideration, denied again on January 31, 2020. (*Id*.). On February 5, 2020, Plaintiff filed a written request for a hearing, which was granted. The hearing was conducted on November 16, 2020, by an Administrative Law Judge ("ALJ"). (*Id.*). On November 27, 2020, the ALJ found that Plaintiff was not disabled under sections 216(i) and 223(d) of the Social Security Act. (Tr.

---

[1] This is Plaintiff's third application for benefits. Plaintiff filed two additional applications for Disability Insurance Benefits and Supplemental Security Income Benefits on May 12, 2014, and on May 15, 2017. (ECF No. 13-1, p. 3; Tr. 53, 71). Both prior applications were denied initially and upon reconsideration. (Tr. 53, 71). For each application, Plaintiff requested a hearing, and after each hearing was conducted, the Administrative Law Judge found that Plaintiff was not disabled under sections 216(i) and 223(d) of the Social Security Act. (*Id.*).

14-22). On February 24, 2021, the Appeals Council denied Plaintiff's request for review, and the ALJ's decision became the final and reviewable decision of the SSA. (Tr. 1). *See also* 20 C.F.R. § 422.210(a).

## II.   ANALYSIS PERFORMED BY THE ADMINISTRATIVE LAW JUDGE

The Social Security Act defines disability as the "inability to engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment which can be expected to result in death or which has lasted or can be expected to last for a continuous period of not less than 12 months." 42 U.S.C. § 423(d)(1)(A). An individual is deemed to have a disability if his/her "physical or mental impairment or impairments are of such severity that he is not only unable to do his previous work but cannot, considering his age, education, and work experience, engage in any other kind of substantial gainful work . . . which exists in significant numbers in the region where such individual lives or in several regions of the country." 42 U.S.C. § 423(d)(2)(A).

To determine whether a person has a disability, the ALJ engages in the five-step sequential evaluation process set forth in 20 C.F.R. §§ 404.1520(a); 416.920(a). *See, e.g., Barnhart v. Thomas*, 540 U.S. 20, 24-25 (2003); *Mascio v. Colvin*, 780 F.3d 632, 634-35 (4th Cir. 2015). The steps used by the ALJ are as follows: step one, assess whether a claimant has engaged in substantial gainful activity since the alleged disability onset date; step two, determine whether a claimant's impairments meet the severity and durations requirements found in the regulations; step three, ascertain whether a claimant's medical impairment meets or equals an impairment listed in the regulations ("the Listings"). If the first three steps are not conclusive, i.e., a claimant's impairment is severe but does not meet one or more of the Listings, the ALJ proceeds to step four. At step four, the ALJ assesses the claimant's residual functional capacity ("RFC"). A claimant's RFC is the most that a claimant could do despite her/his limitations, through consideration of claimant's "'medically determinable impairments of which [the ALJ is] aware,' including those not labeled severe at step two." *Mascio*, 780 F.3d at 635 (quoting 20 C.F.R. § 416.945(a)). Also at step four, the ALJ analyzes whether a claimant could perform past work, given the limitations caused by her/his impairments. Finally, at step five, the ALJ analyzes whether a claimant could perform jobs other than what the claimant performed in the past, and whether such jobs exist in significant numbers in the national economy. *See* 20 C.F.R. §§ 404.1520(a)(4)(i) - 404.1520(a)(4)(v).

At steps one through four, it is the claimant's burden to show that she is disabled. *Bowen v. Yuckert*, 482 U.S. 137, 140-42 (1987); *Monroe v. Colvin*, 826 F.3d 176, 179-80 (4th Cir. 2016). If the ALJ's evaluation moves to step five, the burden then shifts to the SSA to prove that a claimant has the ability to perform work and, therefore, is not disabled. *Hunter v. Sullivan*, 993 F.3d 31, 35 (4th Cir. 1992).

Here, the ALJ evaluated Plaintiff's claim by following the sequential evaluation process outlined above. (Tr. 14-22). At step one, the ALJ found that Plaintiff had not engaged in substantial gainful activity since June 15, 2019, the alleged onset date of Plaintiff's disability. (Tr.

*Keri Diane P. v. Kijakazi, Acting Commissioner of Social Security*
Civil No. GLS 21-0918
August 5, 2022
Page 3

15). At step two, the ALJ found that Plaintiff suffered from the following severe impairments: schizoaffective disorder, bipolar disorder, and attention deficit hyperactivity disorder (ADHD). (*Id.*). The ALJ found these impairments were severe because these impairments significantly limit the Plaintiff's ability to perform basic work activities as required by Social Security Regulation (SSR) 85-28. (*Id.*). However, at step three the ALJ also determined that none of Plaintiff's impairments or combination of impairments met or medically equaled one or more of the Listings. (Tr. 15-16). Despite not finding any mental impairments that met or equaled the listings, the ALJ found that Plaintiff had a moderate limitation in: (1) interaction with others; and (2) concentration, persistence, and pace. (*Id.*). Taking into account Plaintiff's severe impairments, the ALJ next assessed the claimant's RFC. Despite Plaintiff's severe impairments, the ALJ determined that Plaintiff had the RFC to:

> perform a full range of work at all exertional levels but with the following nonexertional limitations: the claimant can perform unskilled work, at reasoning level one (1) or two (2), with no assembly line work, stable work environment with occasional changes in work setting and work processes. The claimant can tolerate occasional interaction with coworkers, with no teamwork or tandem tasks, and no interaction with the public.

(Tr. 16). At step four, the ALJ found that Plaintiff was unable to perform past relevant work. (Tr. 20). Before making a finding regarding step five, the ALJ conducted a hearing. At that hearing, a vocational expert ("VE") testified about whether a hypothetical person with the same age, education, and work experience as the Plaintiff with her RFC could perform Plaintiff's prior work as a bank teller and fast food worker. (Tr. 47). The VE testified that this hypothetical individual would not be able to perform Plaintiff's past work. (Tr. 47). At step five, the ALJ ultimately determined that Plaintiff was not disabled, because she could perform other work existing in significant numbers in the national economy, e.g., as a mat packer, a marker, and a router. (Tr. 22).

### III.   DISCUSSION

In requesting summary judgment, Plaintiff argues that: (1) the ALJ improperly assessed Plaintiff's subjective complaints regarding her hallucinations; (2) a medical opinion from Disability Determination Services was initially omitted from the evidentiary record; (3) the ALJ's hypothetical question to the VE did not fully account for Plaintiff's moderate limitations in concentration, persistence, and pace; and (4) the ALJ failed to address "Dr. Anderson's report" in his opinion. (ECF No. 13-1, "Plaintiff's Motion," pp. 3-8).[2] Regarding her subjective complaints, Plaintiff specifically asserts that: (1) the ALJ improperly required her to provide objective medical evidence to support her subjective complaints about the existence and intensity of her hallucinations, contrary to the Fourth Circuit's holding in *Arakas v. Comm'r, Soc. Sec. Admin.*,

---

[2] Plaintiff refers to "Dr. Anderson's report" in her summary judgment motion. (Plaintiff's Motion, pp. 3, 4, 5, 7). This appears to be an error. The records to which Plaintiff cites were authored by Dr. Deborah R. Matthews. (Tr. 78, 1074-82).

*Keri Diane P. v. Kijakazi, Acting Commissioner of Social Security*
Civil No. GLS 21-0918
August 5, 2022
Page 4

983 F.3d 83, 97-98 (4th Cir. 2020); and (2) her hallucinations are like fibromyalgia, in that they cannot be proven by objective evidence. According to the Plaintiff, then, the ALJ erred by considering objective evidence when evaluating her symptoms. (Plaintiff's Motion, pp. 7-8).

The SSA counters that the ALJ did not rely exclusively on objective evidence to evaluate Plaintiff's subjective statements because, in addition to objective evidence, the ALJ considered Plaintiff's activities of daily living ("ADLs") and the conservative treatment of her impairments. Therefore, the ALJ properly evaluated Plaintiff's subjective statements regarding her hallucinations. (ECF No. 14-1, "SSA's Motion" pp. 12-13).

I have carefully reviewed the arguments and the record. I find persuasive Plaintiff's first argument that the ALJ improperly assessed her subjective complaints by effectively requiring her to provide objective evidence to support them. Accordingly, I find that remand is appropriate, for the reasons set forth below. Because this case is being remanded, I will not address Plaintiff's remaining arguments.

When evaluating whether a claimant is disabled, an ALJ must engage in a two-step analysis of a claimant's subjective statements "about [her] impairments and symptoms." *Lewis v. Berryhill*, 858 F.3d 858, 866 (4th Cir. 2017); *see also* 20 C.F.R. §§ 404.1529(b)-(c), 416.929(b)-(c). At step one, the ALJ considers whether objective medical evidence exists of a condition that could reasonably be expected to produce the claimant's "alleged symptoms." 20 C.F.R. §§ 404.1529(b)-(c), 416.929(b)-(c). Next, assuming that the claimant satisfies this initial requirement of showing a medically determinable impairment, the ALJ proceeds to step two. At step two, the ALJ must evaluate the intensity and persistence of the claimant's symptoms to determine the extent to which they limit the claimant's ability to work. *Id.* §§ 404.1529(c), 416.929(c). In evaluating the intensity, persistence, and limiting effects of an individual's symptoms, the ALJ is to consider "all of the evidence presented," including a claimant's: (a) prior work history; (b) statements about her symptoms; (c) evidence from medical sources; and (d) observations. *Id*. This requires an ALJ to examine a claimant's ADLs, medication, and treatment to relieve symptoms, among other factors. *Id.* At this second step, the ALJ assesses the credibility of a claimant's statements about her symptoms "and their functional effects." *Lewis*, 858 F.3d at 865-66. The regulations also instruct that an ALJ should consider "whether there are any inconsistencies in the evidence and the extent to which there are any conflicts between [a claimant's statements] and the rest of the evidence." 20 C.F.R. §§ 404.1529(c)(4), 416.929(c)(4).

In performing this two-step analysis, an ALJ must keep in mind the medical condition at issue. If the medical condition is like fibromyalgia, then the symptoms may not be supported by objective evidence. *Arakas*, 983 F.3d at 97 (ALJ "may not rely on objective medical evidence (or lack thereof)—even as just one of multiple factors—to discount a claimant's subjective complaints regarding symptoms of fibromyalgia **or some other disease that does not produce such evidence.**") (emphasis supplied); *see also* SSR 16-3p, 2016 WL 1119029, at *4 (Mar. 16, 2016) ("[s]ymptoms cannot always be measured objectively through clinical or laboratory diagnostic techniques"). In those circumstances, it is improper for an ALJ to rely upon objective medical evidence to discount a claimant's subjective complaints about her symptoms. *Arakas*, 983 F.3d at

*Keri Diane P. v. Kijakazi, Acting Commissioner of Social Security*
Civil No. GLS 21-0918
August 5, 2022
Page 5

97; *see also Hines v. Barnhart*, 453 F.3d 559, 561 (4th Cir. 2006) (holding that the ALJ improperly required objective evidence of claimant's pain because Sickle Cell Disease does not produce such objective evidence). As a corollary, if a claimant suffers from a disease or condition for which there is objective medical evidence that supports or refutes its existence, then an ALJ may consider that evidence in combination with other evidence in the record. *Patricia P. v. Kijakazi*, Civ. No. TJS-21-565, 2022 WL 683088, at *3 (D. Md. Mar. 8, 2022); *James A. v. Kijakazi*, Civ. No. 1:20-cv-01992-JMC, 2021 WL 4975178, at *3 (D. Md. Oct. 26, 2021).

In either scenario, an ALJ may not reject a claimant's subjective statements about the intensity and persistence of her pain **solely** because there is no objective medical evidence to support them. *Arakas*, 983 F.3d at 95; *see also Hines*, 453 F.3d at 564-65; s*ee also* 20 C.F.R. § 404.1529(c) (emphasis supplied). Put another way, at step two, a claimant may rely exclusively on "subjective evidence to prove the degree to which [her] symptoms affect [her] ability to work[.]" *Carolyn L. v. Kijakazi*, Civ. No. TJS 20-3686, 2022 WL 897137, at *3 (D. Md. Mar. 28, 2022). Finally, the ALJ's decision "must contain specific reasons for the weight given to the individual's symptoms, [and] be consistent with and supported by the evidence[.]" 2016 WL 1119029, at *9. However, if an ALJ is going to reject a claimant's subjective statements as incredible or inconsistent with the evidence, it is important for the ALJ to make a finding regarding a claimant's credibility and to specifically refer to the evidence upon which the ALJ relies to reach her credibility determination. *Hammond v. Heckler*, 765 F.2d 424, 426 (4th Cir. 1985); *see also Carolyn G. v. Kijakazi*, Civ. No. ADC 20-1363, 2021 WL 2982129, at *5 (D. Md. July 15, 2021).

As a preliminary matter, the Court must identify whether Plaintiff's hallucinations are the type of medical condition that can be supported by objective medical evidence. *See also Carollyn S. v. Kijakazi*, Civ. No. ADC-20-2552, 2021 WL 4170431, at *8 (D. Md. Sept. 14, 2021) (assessing first whether claimant's medical conditions produced objective medical evidence). In her summary judgment motion, Plaintiff avers that objective medical evidence, or any other quantifiable measurement, cannot prove her hallucinations' intensity, persistence, and functional limitations. She asserts that unlike fibromyalgia, which was at issue in *Arakas*, hallucinations do not even produce trigger point evidence. (Plaintiff's Motion, p. 8). The Court finds that objective medical evidence cannot support Plaintiff's hallucinations. *See, e.g.*, *Bullington v. Kijakazi*, Civ. No. KK-21-7, 2022 WL 816453, at *11 (D.N.M. Mar. 17, 2022) (finding that hallucinations are "inherently subjective and intermittent" and cannot be proven by objective evidence); *Marshall v. Berryhill*, Civ. No. WHO-19-00306, 2020 WL 1531358, at *11 (N.D. Cal. Mar. 31, 2020) (ALJ erred in requiring objective evidence of hallucinations because psychiatric conditions necessarily depend on a claimant's self-reporting).

*Arakas*, *supra*, is instructive. In *Arakas*, the claimant suffered from fibromyalgia, a disease that the Fourth Circuit opined has "symptoms [that are] entirely subjective, with the exception of trigger-point evidence[.]" 983 F.3d at 96 (citation omitted). Thus, "normal clinical and laboratory results" are irrelevant to the severity, persistence, or limiting effects of the disease. *Id*. at 97. The Fourth Circuit held that the ALJ erred by increasing the claimant's burden of proof by discrediting the claimant's subjective complaints regarding the severity, persistence, and limiting effects of her symptoms. *Id.* According to the Fourth Circuit, the claimant was entitled to rely exclusively on

*Keri Diane P. v. Kijakazi, Acting Commissioner of Social Security*
Civil No. GLS 21-0918
August 5, 2022
Page 6

subjective complaints to prove that her symptoms were so severe as to prevent her from working a full eight-hour day. *Id.* at 98. Accordingly, remand was required.

In addition, in *Stoker v. Saul*, 833 F. App'x 383, 386 (4th Cir. 2020), the Fourth Circuit found that an ALJ erred by rejecting the claimant's subjective statements because they were unsupported by objective medical evidence. The Fourth Circuit explained that if the objective medical evidence fails to support the claimant's statements, the ALJ "must make a finding on the credibility of the individual's statements based on a consideration of the entire case record," and build an accurate and logical bridge from the evidence to the ALJ's conclusion. *Id.* Thus, *Stoker* stands, in part, for the proposition that when objective evidence fails to support a claimant's statements, an ALJ must base his or her finding on the credibility of a claimant's statements on the entire case record and build an accurate and logical bridge between the evidence and the ALJ's conclusion. *Id.*

In the instant case, the ALJ found that Plaintiff suffered from the following severe impairments: schizoaffective disorder, bipolar disorder, and ADHD. (Tr. 15). The ALJ considered Plaintiff's subjective statements about her hallucinations. First, Plaintiff reported that her mind is "constantly overwhelmed by visions and voices," and that "she experiences hallucinations every day, for at least half of the day[.]" (Tr. 17). Plaintiff also reported that she has "blackouts" in her memory and is "constantly distracted" by the hallucinations, preventing her from driving or sleeping well at night. (*Id.*). At the first step of analyzing Plaintiff's subjective statements, the ALJ found that Plaintiff's "medically determinable impairments could reasonably be expected to cause the alleged symptoms." (*Id.*).

At step two, the ALJ considered Plaintiff's statements in concert with the other evidence in the record, including her mental status examinations ("MSEs"), her ADLs, and her "conservative treatment." The ALJ first considered an MSE from May 2019 and found "no evidence of hallucinations[.]" (Tr. 18). According to this MSE, despite Plaintiff's reports of ongoing hallucinations, there were "none evident" at the time of examination. (Tr. 812). The ALJ also reviewed MSEs from June 2019, April 2020, May 2020, July 2020, and October 2020 in detail, finding that in each examination, Plaintiff reported hallucinations among other symptoms. (Tr. 18-19). Citing broadly to the MSEs from January 2019 through October 2020, the ALJ opined that the MSEs as a whole "reflect[ed] stable findings, with ongoing depressed/anxious/irritable/sad moods and subjectively reported hallucinations, nothing further." (Tr. 20). The ALJ also found that Plaintiff's symptoms had not changed since the prior decisions regarding Plaintiff's prior applications for benefits, finding that Plaintiff "continues to report ongoing hallucinations, but exhibit(sic) stable mental status findings on exam." (*Id.*). With regard to Plaintiff's ADLs, the ALJ found that Plaintiff could do the "housecleaning, take care of her children, help her nine-year-old son with his schoolwork as needed, shop in stores for groceries, pay bills and count change, read, draw, write, and watch TV." (*Id.*). Finally, the ALJ reviewed Plaintiff's history of medication, finding that Plaintiff has taken multiple medications over time, and she has consistently reported that her symptoms have not improved with medication. (Tr. 18-19). The ALJ also found that Plaintiff had undergone "conservative treatment," but did not explain what this meant. (Tr. 20).

*Keri Diane P. v. Kijakazi, Acting Commissioner of Social Security*
Civil No. GLS 21-0918
August 5, 2022
Page 7

Regarding step two of the analysis, I find that the ALJ improperly discredited Plaintiff's statements about the severity, persistence, and limiting effects of her symptoms when he found that her statements "[were] not entirely consistent with the medical evidence and other evidence in the record." (Tr. 18).

The following three examples establish how the ALJ erred. First, while the ALJ "recognize[d]" Plaintiff's subjective complaints of hallucinations, the ALJ focused almost exclusively on Plaintiff's MSE results to reject her complaints as being inconsistent with those records. (Tr. 17-20).[3] Plaintiff was entitled to rely exclusively on her subjective complaints to prove the severity, persistence, and limiting effects of her hallucinations, particularly because they do not produce objective evidence. *Arakas*, 983 F.3d at 96; *see also Hines*, 453 F.3d at 565; *Stoker*, 833 F. App'x at 386. As in *Arakas*, the SSA is correct that the ALJ may consider other evidence. However, the ALJ may not "effectively requir[e]" objective evidence by placing "undue emphasis" on the lack thereof to support Plaintiff's complaints. *Arakas*, 983 F.3d at 97. Therefore, the ALJ improperly increased Plaintiff's burden of proof. *Id.* at 96. To the extent that the ALJ considered other evidence including the ADLs and Plaintiff's conservative treatment, he further erred as set forth below.

Second, the ALJ listed Plaintiff's ADLs, but he failed to consider the extent to which Plaintiff could perform them or explain how they demonstrated her ability to work an eight-hour day. *See Woods v. Berryhill*, 888 F.3d 686, 694 (4th Cir. 2018); *see also Stoker*, 833 F. App'x at 386; *Brown v. Comm'r Soc. Sec. Admin.*, 873 F.3d 251, 269 (4th Cir. 2017) (ALJ's failure to explain how claimant engaging in ADLs showed that claimant could sustain a full-time job and perform the tasks required by light work required remand). In addition, the ALJ did not explain how Plaintiff's activities undermined Plaintiff's subjective complaints about her hallucinations. *See Arakas*, 983 F.3d at 100. The Court cannot perform a meaningful review of the evidence because the ALJ failed to "build an accurate and logical bridge from the evidence to his conclusion" that Plaintiff's ADLs undermine her complaints. *Stoker*, 833 F. App'x at 386 (internal quotation marks and citations omitted).

Third, the ALJ cursorily cited to "conservative treatment" to discredit Plaintiff's subjective complaints. (Tr. 20). The Fourth Circuit has held that, in general, an ALJ may consider a claimant's treatment history among other factors when evaluating credibility. *Dunn v. Colvin*, 607 F. App'x 264, 274 (4th Cir. 2015). However, an ALJ must also explain what is meant by "conservative treatment," and how that treatment was successful in managing the claimant's symptoms. *See Monroe v. Colvin*, 826 F.3d 176, 189-90 (4th Cir. 2016) (ALJ failed to build an accurate and logical bridge when discrediting claimant's subjective testimony, as ALJ did not explain the phrase "conservative treatment" or how it undermined claimant's credibility). In this case, the ALJ does not explain: (1) the phrase "conservative treatment;" (2) how he found that Plaintiff's impairments were treated conservatively; or (3) how that treatment was successful in

---

[3] The ALJ further erred by improperly rejecting Plaintiff's subjective complaints of hallucinations, without making a finding regarding Plaintiff's credibility and specifically point to the evidence upon which he relied to make that finding. *Hammond*, 765 F.2d at 426; *see also Monroe*, 826 F.3d at 189 (holding that the ALJ failed to build accurate and logical bridge to conclusion that claimant's testimony lacked credibility).

managing Plaintiff's symptoms. (Tr. 17-20). Although the ALJ reviewed the different medications Plaintiff took over time to treat her symptoms, the ALJ failed to explain how he found that Plaintiff's treatment history constitutes conservative treatment or undermines her subjective complaints. (Tr. 18, 19). Accordingly, I find that the ALJ again failed to build an accurate and logical bridge between the evidence and his conclusion that Plaintiff's treatment history undermines her complaints. *Stoker*, 833 F. App'x at 386; *see Monroe*, 826 F.3d at 190. Therefore, the ALJ erred.

In sum, the ALJ erred when assessing Plaintiff's statements concerning her symptoms by: (1) increasing her burden of proof by focusing on objective medical evidence; (2) inadequately explaining how her activities of daily living undermined her subjective complaints; and (3) failing to build an "accurate and logical bridge" between the evidence and his conclusions regarding Plaintiff's treatment. I find that the ALJ's analysis is inconsistent with SSR 16-3p and *Arakas*, and remand is required.

On remand, the ALJ should provide a narrative discussion that explicitly addresses Plaintiff's subjective statements and explains which evidence supports the ALJ's conclusion that Plaintiff is not disabled.

Because this case is being remanded on other grounds, the Court will not address Plaintiff's remaining contentions regarding the ALJ's decision. On remand, however, the ALJ should address Plaintiff's other arguments.

### IV.     CONCLUSION

For the reasons set forth above, both parties' summary judgment motions (ECF Nos. 13, 14) are **DENIED**. In addition, consistent with sentence four of 42 U.S.C. § 405(g), the Agency's judgment is **REVERSED IN PART** due to inadequate analysis. The case is **REMANDED** for further proceedings in accordance with this opinion. I express no opinion as to whether the ALJ's ultimate finding that Plaintiff is not disabled, and therefore, not entitled to benefits, is correct. The Clerk of the Court is directed to **CLOSE** this case.

Despite the informal nature of this letter, it should be flagged as an opinion and docketed as such. A separate Order follows.

Sincerely,

/s/
The Honorable Gina L. Simms
United States Magistrate Judge